James E. Hathaway, Esq. Kutak Rock LLP 120 West Capitol Avenue, Suite 2000 Little Rock, Arkansas 72201-3706
Dear Mr. Hathaway:
I am writing in response to your request for my approval of an Interlocal Cooperation Agreement (the "Agreement") submitted pursuant to A.C.A. § 15-5-207(b)(20) (Supp. 2007) between the Arkansas Development Finance Authority ("ADFA") and the Jefferson County Public Facilities Board (the "PFB").
In your request, you characterize the Agreement as follows:
Pursuant to Arkansas Code Annotated § 15-5-207(b)(20), ADFA is authorized to enter into "intergovernmental agreements" with other public agencies for the purposes of, among other things, allowing such public agency to "transfer or delegate any function, power, responsibility, or duty" to the Authority. The attached Agreement transfers to ADFA the right to refund certain outstanding bonds issued by the PFB.
ADFA proposes to refund the PFB bonds by issuing its own refunding notes or bonds, using a technique called a cash-for-cash refunding. ADFA will use the proceeds of the refunding bonds to refund the PFB bonds, swapping the refunding proceeds for revenues already held under the Indenture for the PFB bonds. The exchanged proceeds can then be used to generate additional single family mortgage loans for first-time homebuyers under ADFA's single family mortgage program.
By using the refunding technique, ADFA can provide funds to generate single family mortgages without using the State's private activity bond volume cap as set out in Internal Revenue Code § 146, which is a limit on the amount of private activity bonds that can be issued in each state, based on a per capita formula. Under current law, only ADFA has the authority to acquire qualifying single family mortgage loans in Arkansas.[1] While the PFB could refund the prior bonds, it cannot, on its own, utilize the refundings to generate new loans.
ADFA plans on entering into numerous similar agreements, which will, in the end, result in over $140,000,000 in mortgage loan financing without affecting the State's private activity volume cap. The holders of the PFB bonds will be unaffected, and there will be no cost to the PFB.
RESPONSE
In my opinion, the Agreement is in proper form and is, in all likelihood, consistent with the provisions of Arkansas law. As discussed below, I cannot and will not speculate regarding whether the Agreement might contravene any provision of federal law.
My role in approving the proposed Agreement is set forth in A.C.A. § 15-5-207(b)(20)(E)(i) (Supp. 2007), which provides as follows regarding any agreement between the ADFA and another agency:
Every agreement prior to and as a condition precedent to its final adoption and performance shall be submitted to the Attorney General, who shall determine whether the agreement is in proper form and compatible with the laws of the State of Arkansas.
With respect to the statutory basis for the above described Agreement, A.C.A. § 15-5-207(b)(20) provides in pertinent part that the ADFA is authorized to do the following:
 (A) To contract, cooperate, or join with any one (1) or more other governments or public agencies or with any political subdivisions of the state or with the United States to perform any administrative service, activity, or undertaking that any such contracting party is authorized by law to perform, including the issuance of bonds.
 (B) An "intergovernmental agreement" is defined as any service contract entered into by a contracting party that establishes a permanent perpetual relationship thereby obligating the financial resources of the contracting party.
 (C) The term "permanent or perpetual relationship" is defined for purposes of this subchapter and §§ 15-5-101 et seq. and 15-5-301 et seq. as any agreement exhibiting an effective duration greater than one (1) year, twelve (12) calendar months, or an agreement exhibiting no fixed duration but when the apparent intent to such an agreement is to establish a permanent or perpetual relationship. Such intergovernmental agreements shall be authorized by ordinance or resolution of the contracting party. Any intergovernmental agreement enacted may provide for the contracting party to:
 (i) Cooperate in the exercise of any function, power, or responsibility;
 (ii) Share the services of any officer, department, board, employee, or facility; and
 (iii) Transfer or delegate any function, power, responsibility, or duty.
(Emphases added.)
Before discussing the significance of the passages highlighted in the above statutory excerpt, I feel obliged to elaborate on your summary of what the Agreement appears designed to accomplish. As noted above, the ADFA is the only agency charged with authority to issue single family mortgage loans in Arkansas. A.C.A. § 15-5-304. However, the ADFA's authority to finance such loans through the issuance of tax-exempt, private activity mortgage bonds is limited under federal law by what is termed an annual "volume cap," under federal law, see 26 U.S.C. § 146
(Supp. 2007) — a restriction acknowledged in A.C.A. § 5-5-601(b)(2) (Repl. 2003). The Agreement appears designed to enable the ADFA to issue single family mortgage loans through the cash proceeds it would receive from the PBF as consideration for the ADFA's refunding the PBF's current bond obligations. At issue, then, is whether this arrangement is consistent with the Arkansas law recited above.[2]
At issue initially is whether Arkansas law authorizes a state governmental agency to refund the bonds of a political subdivision of the state. Section 15-5-301 of the Code (Repl. 2003) authorizes the ADFA to issue both tax-exempt and non-tax-exempt bonds for various specified purposes. As previously noted, A.C.A. § 15-5-304 (Repl. 2003) further mandates that the ADFA "shall be the exclusive issuer of mortgage bonds as defined in the Mortgage Subsidy Tax Act of 1980." The Code at no point specifies, however, that mortgages of the sort at issue in your request shall be financed exclusively with the proceeds of such bond issues. Specifically with respect to the question of refunding bonds, A.C.A. § 15-5-314 (Repl. 2003) authorizes the ADFA to issue such bonds "for the purpose of refunding, either at maturity or in advance of maturity, any bonds issued under this subchapter." This particular subchapter does not address one way or the other the possibility that the ADFA might issue refunding bonds on behalf of another agency or political subdivision, using the consideration offered for the issuance of such bonds to finance the issuance of additional mortgage loans.
In my opinion, the Code's failure directly to mention in subchapter 3 of the Arkansas Development Finance Authority Act the possibility of such a refunding bond issue does not dictate that such a refunding program is impermissible under state law. On the contrary, I believe the above recited provisions of A.C.A. § 15-5-207(b)(20) directly support such a program both in authorizing the ADFA to cooperate with political subdivisions of the state in the issuance of bonds and in authorizing any political subdivision to delegate to the ADFA any power the political subdivision might have with respect to bonds, logically including the power to issue refunding bonds.[3]
The remaining concern is whether the Agreement meets the statutory conditions applicable to any intergovernmental contract under the applicable subsection of the Code. In my opinion, the ADFA and the PFB are both clearly "public agencies" in the sense used in A.C.A. §15-5-207(b)(20)(A), thus rendering them capable of entering into an intergovernmental agreement.[4] The question, then, is whether the Agreement meets the following statutory requirements set forth at A.C.A. § 15-5-207(b)(20)(D):
An intergovernmental agreement shall be authorized and approved by the governing body of each party to the agreement, shall set forth fully the purposes, powers, rights, obligations, and responsibilities of the contracting parties, and shall specify the following:
 (i) Its duration;
 (ii) The precise organization, composition, and nature of any separate legal entity created;
 (iii) The purpose or purposes of the intergovernmental agreement;
 (iv) The manner of financing the joint or cooperative undertaking and establishing and maintaining a budget;
 (v) The permissible method or methods to be employed in accomplishing the partial or complete termination of an agreement and for disposing of property upon partial or complete termination. The method or methods for termination shall include a requirement of six (6) months' written notification of the intent to withdraw by the governing body of the public agency wishing to withdraw;
 (vi) Provision for an administrator or a joint board responsible for administering the joint or cooperative undertaking, including representation of the contracting parties on the joint board;
 (vii) The manner of acquiring, holding, and disposing of real and personal property used in the joint or cooperative undertaking; and
 (viii) Any other necessary and proper matters.
Having reviewed the proposed Agreement, I hereby approve it as meeting these statutory requirements and conforming to Arkansas law. I must again stress, however, that I cannot opine on the compatibility of the Agreement with federal law. That determination is outside my statutory duty and authority.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] See A.C.A. § 15-5-304 (Repl. 2003).
[2] As previously noted, A.C.A. § 15-5-207(b)(20)(E)(i) limits my role to determining only whether the Agreement "is in proper form and compatible with the laws of the State of Arkansas." I cannot and will not speculate on whether the Agreement conforms with federal law.
[3] Arkansas Const. art. 12, § 12 precludes, inter alia, the State from ever assuming or paying the debt of any county. In reviewing the Agreement, I gather that the ADFA, as a state agency, anticipates receiving full compensation from the county in consideration of its issuance of refunding bonds on behalf of the county. In my opinion, the Agreement would consequently be immune from constitutional challenge under this provision.
[4] Subsection 25-20-103(1)(B) of the Arkansas Code (Supp. 2007) provides in pertinent part: As used in this chapter: (1) "Public agency" means any:* * *(B) Political subdivision of this state;(C) Agency of the state government or of the United States[.] The ADFA is clearly an agency of state government. The PFB is further an arm of the county, see A.C.A. § 14-137-106 (Repl. 1998), and hence a political subdivision of the state.